IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

GERALD RAY OSBORNE,

    Plaintiff,                               No. 2:08-cv-01870 KJN

    v.

MICHAEL J. ASTRUE,
Commissioner of Social Security,         <u>ORDER</u>

    Defendant.

_____/

        Plaintiff seeks judicial review of a final decision of the Commissioner of Social Security ("Commissioner" or "defendant") denying plaintiff's application for Disability Insurance Benefits under Title XVI of the Social Security Act, 42 U.S.C. §§ 1381 et seq. ("Act"). In his motion for summary judgment, plaintiff principally contends that the Administrative Law Judge ("ALJ") in this case erred by: (1) failing to develop the record; (2) failing to properly evaluate and credit the third party statement of plaintiff's son; and (3) failing to secure the testimony of a vocational expert. (Dkt. No. 18.) The Commissioner filed a cross-motion for summary judgment. (Dkt. No. 21.)

        For the reasons stated below, the court denies plaintiff's motion for summary

////

judgment and grants the Commissioner's cross-motion for summary judgment.[1]

I.   BACKGROUND

    A.   Procedural Background

On September 30, 2004, plaintiff filed an application for Supplemental Security Income ("SSI") benefits, alleging a disability onset date of May 1, 1994 (Administrative Transcript ("AT") 20.)  The Social Security Administration denied plaintiff's application on February 16, 2005, and upon reconsideration on March 24, 2005.  (AT 20, 59-64.)  The Social Security Administration notified plaintiff that in order to qualify for SSI payments based on disability, his health problems must (1) keep him from doing any kind of substantial work, even part-time and (2) last or be expected to last for at least 12 months in a row or result in death, and found that his "condition [was] not severe enough to keep [him] from working."  (AT 59-60.)  Plaintiff timely filed a request for a hearing by an ALJ on May 31, 2005.  (AT 70.)

Plaintiff's hearing was scheduled for April 27, 2006.  (AT 20.)  Plaintiff failed to appear at the hearing.  (Id.)  It was subsequently discovered that plaintiff was incarcerated at the time of the hearing.  (Id.)  The hearing was rescheduled for December 12, 2006, but plaintiff failed to appear at that hearing.  (Id.)  The Social Security Administration issued an Order to Show Cause for failing to appear.  (Id.)  Plaintiff responded to the notice, stated that he had been homeless and thus did not receive the hearing notice, and another hearing was scheduled for March 14, 2007.  (Id.)  Plaintiff appeared at this hearing.  (Id.)  However, this hearing was postponed in order for claimant to obtain legal representation.  (Id.)  A hearing date of May 14, 2007 was set, but plaintiff's newly retained counsel informed the ALJ's office that plaintiff would be unable to attend due to a family emergency.  (Id.)  The hearing was rescheduled for August 6, 2007.  (Id.)  Plaintiff did not appear at the hearing.  Plaintiff's counsel, who did appear,

---

[1] This case was referred to the undersigned pursuant to Eastern District of California Local Rule 302(c)(15) and 28 U.S.C. § 636(c), and both parties have voluntarily consented to proceed before a United States Magistrate Judge.  (Dkt. Nos. 6, 9.)  This case was reassigned to the undersigned by an order entered February 9, 2010.  (Dkt. No. 22.)

2

informed the ALJ that he had lost contact with his client and that plaintiff's son had also lost contact with the plaintiff.  (Id.)  The ALJ concluded that the plaintiff was not an essential witness to the hearing and subsequently issued a written ruling.  (Id.)

In a decision dated September 5, 2007, the ALJ denied plaintiff's application for SSI benefits.  (AT 20-28.)  The ALJ found that plaintiff had the residual functional capacity to perform certain light work and therefore was not disabled within the meaning of the Act.[2]  (AT 25.)  The ALJ's decision became the final decision of the Commissioner when the Appeals Council denied plaintiff's request for review.  (AT 5-7.)

---

[2]  Disability Insurance Benefits are paid to disabled persons who have contributed to the Social Security program, 42 U.S.C. §§ 401 et seq.  Generally speaking, Supplemental Security Income is paid to disabled persons with low income regardless of contributions.  42 U.S.C. §§ 1382 et seq.  Under both benefit structures, the term "disability" is defined, in part, as an "inability to engage in any substantial gainful activity" due to "any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months."  42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A).  A five-step sequential evaluation governs eligibility for benefits.  See 20 C.F.R. §§ 404.1520, 404.1571-1576, 416.920, 416.971-976; see also Bowen v. Yuckert, 482 U.S. 137, 140-42 (1987).  The Ninth Circuit Court of Appeals has summarized the sequential evaluation as follows:

> Step one:  Is the claimant engaging in substantial gainful activity?  If so, the claimant is found not disabled.  If not, proceed to step two.
> Step two:  Does the claimant have a "severe" impairment?  If so, proceed to step three.  If not, then a finding of not disabled is appropriate.
> Step three:  Does the claimant's impairment or combination of impairments meet or equal an impairment listed in 20 C.F.R., Pt. 404, Subpt. P, App.1?  If so, the claimant is automatically determined disabled.  If not, proceed to step four.
> Step four:  Is the claimant capable of performing his past work?  If so, the claimant is not disabled.  If not, proceed to step five.
> Step five:  Does the claimant have the residual functional capacity to perform any other work?  If so, the claimant is not disabled.  If not, the claimant is disabled.

Lester v. Chater, 81 F.3d 821, 828 n.5 (9th Cir. 1995).

The claimant bears the burden of proof in the first four steps of the sequential evaluation process.  Bowen, 482 U.S. at 146 n.5.  The Commissioner bears the burden if the sequential evaluation process proceeds to step five.  Id.

3

B. Summary of Relevant Medical History and Evidence

At the time of the hearing before the ALJ, plaintiff was 49 years old. (AT 50.) Plaintiff has no prior work history. (AT 101-08, 115.) Plaintiff contended that anti-social behavior, neck pain, back pain, right hand problems and anxiety attacks have prevented him from working since May 1994. (AT 22.)

On September 19, 2004, plaintiff was released from prison on parole after serving 89 months in prison for possession of cocaine. (AT 23.) Plaintiff filed an application for disability benefits eleven days later. (AT 20.) Plaintiff had a history of seven prison terms for various offenses including burglary, robbery, possession of stolen property and drug charges. (Id.)

On December 13, 2004, plaintiff underwent a psychiatric evaluation by Dr. Michael Joyce, M.D. (AT 203.) Dr. Joyce reported that plaintiff's chief complaint was "[t]rying to stay out there." (Id.) Plaintiff told Dr. Joyce that he did not have any major mood complaints, psychotic symptoms, mania or panic attacks. (AT 23.) Dr. Joyce reviewed plaintiff's extensive criminal history and use of heroine and cocaine. (Id.) Plaintiff reported that his mother was murdered and his father was at least at some point in federal prison. (AT 204.) Dr. Joyce noted that since leaving prison, plaintiff had been living with his son and his son's girlfriend, and sleeping on the couch. (AT 205.) Plaintiff reported that he had never been employed, either full-time or part-time. (Id.) Dr. Joyce listed the following diagnoses:

> DSM-IV Diagnoses
> Axis I: Intravenous heroin dependence, reportedly in one-year remission. Methamphetamine addiction, reportedly in two-year remission. No evidence for a primary mood, thought, or anxiety disorder at this time.
> Axis II: History of antisocial behavior which does not appear grossly active at this time.
> Axis III: Neck pain.
> Axis IV: On parole and randomly drug tested.

Axis V: GAF = 65-75.[3]

(AT 206.)

Dr. Joyce found that "[w]ith sustained sobriety, the claimant does appear capable of completing a workday and workweek without interruption from a definitive AXIS I condition." (AT 207.) He listed plaintiff's prognosis as "guarded." (Id.)

On December 18, 2004, plaintiff completed an orthopedic evaluation with Dr. Natham Pliam, M.D., Ph.D. (AT 208.) Dr. Pliam recorded plaintiff's chief complaints as low back pain with radiation to the right leg, neck discomfort and right hand numbness. (Id.) Plaintiff reported a seven month history of lower back pain and a 3 year history of numbness of the radial aspect of his right hand including mainly his thumb and index finger. (Id.) Plaintiff stated that he saw a doctor seven months prior to his visit with Dr. Pliam, when he was incarcerated, but that he did not currently have access to medical follow-up treatment. (Id.) Dr. Pliam noted that plaintiff has hepatitis C. (AT 209.) Dr. Pliam reviewed medical records, including an x-ray report of plaintiff's spine which "indicated narrowing at C4-5 with foraminal encroachment, posterior spurring and eburnation at C4-5. The spurring was present at C5 and C6, as well." (Id.) Dr. Pliam diagnosed plaintiff with "degenerative cervical spondylosis and probable right C6 radiculopathy, probable right sciatica, chronic low back pain, and rule out degenerative lumbar spondylosis and spinal stenosis." (AT 212.) In sum, Dr. Pliam found that the plaintiff should be "limited to lifting 30 pounds occasionally and 20 pounds repetitively. Standing and walking should be limited to 30-60 minutes, continuously for a cumulative total of 4 hours per day." (Id.)

---

[3] A GAF score of 61-70 indicates "some mild symptoms (e.g. depressed mood and mild insomnia) or some difficulty in social, occupational, or school functioning (e.g. occasional truancy, or theft within the household) but generally functioning pretty well, has some meaningful interpersonal relationships;" a GAF score of 71-80 indicates "if symptoms are present, they are transient and expectable reactions to psychosocial stressors (e.g. difficulty concentrating after family argument; no more than slight impairment in social, occupational or school functioning (e.g. temporarily falling behind in school work)." DSM-IV, 34.

1    Plaintiff was seen at a medical clinic in February 2005.  Plaintiff admitted to
2 "popping" and intravenous drug use.  (AT 24, 192).  Plaintiff was treated with antibiotics for an
3 abscess.  (Id.)

4    State agency physicians, Drs. Janice Thornburg M.D. and Antoine Dipsia, M.D.,
5 reviewed the foregoing medical records and concluded that plaintiff retained the ability to
6 perform light work.  (AT 24, 217.)  After reviewing all of the evidence in the record, the ALJ
7 ultimately concluded that the claimant's back issues prevented him from performing heavy or
8 medium work activities, but not light work, and that there was no evidence of a severe mental
9 impairment.  (AT 24.)

10   Plaintiff submitted additional medical records to the Appeals Council after the
11 ALJ denied his claim.  (AT 4.)  Plaintiff was seen at a medical clinic on September 27, 2007.
12 (AT 251.)  These records reflect that plaintiff was recently released from prison and was
13 prescribed oxycodone for cervical lumbar spinal stenosis.  (Id.)  These records state that plaintiff
14 has chronic disk disease and that plaintiff's chronic pain had increased over the last five years.
15 (Id.)  On October 26, 2007, plaintiff attended a follow up appointment for his chronic pain.  (AT
16 251.)  Plaintiff stated that he did not like the oxycontin medication as much as methadone.  (Id.)

17   On December 28, 2007, and January 29, 2008, plaintiff was again seen for chronic
18 pain.  (AT 248-49.)  February 8, 2008 radiological reports reflected the following diagnostic
19 impressions:

> 1. Multilevel spondylosis[4] as described above causing mild spinal stenosis at the L3-4 level with mild mass effect upon the traversing bilateral 4 nerve roots.  Spondylosis also causes moderate spinal stenosis of the L4-5 level with mass effect without definite impingement of the traversing left L5 nerve root.  Acquired right foraminal compromise at the L4-5 and L5-S1 levels.
> 2. Extensive discogenic and plate edema, which itself could be a cause of back pain.

---

[4] This term essentially refers to any lesion of the spine of a degenerative nature. Stedman's Medical Dictionary, 389 (Lippincott Williams & Wilkins, eds., 28th ed. 2006).

6

>1. Severe multilevel spondylosis superimposed upon reversal of the normal cervical lordosis causing moderate to severe spinal stenosis at the C6-7 level, moderate spinal stenosis at the C4-5 level and C3-4 level. Region of focial myelomalacia[5] is seen at the C4-5 level.
>2. Multilevel foraminal stenosis, several of which appear to be high grade.

(AT 259, 263.)

On March 8, 2008, plaintiff attended a follow up appointment for his chronic pain. The physician discontinued plaintiff's oxycodone and began plaintiff on methadone for chronic pain. (AT 247.)

    C.    <u>Summary of the ALJ's Findings</u>

The ALJ conducted the required five-step evaluation and concluded that plaintiff was not disabled within the meaning of the Act. At step one, the ALJ concluded that plaintiff had not engaged in substantial gainful activity since September 30, 2004, plaintiff's application date. (AT 22.) At step two, the ALJ concluded that plaintiff had the following severe impairments: "cervical spondylosis and right sciatica with chronic lower back pain." (<u>Id</u>.) At step three, he determined that plaintiff's impairments, whether alone or in combination, did not meet or medically equal any impairment listed in the applicable regulations. (AT 24.) The ALJ further determined that plaintiff had the residual functional capacity ("RFC") to perform light work that does not require working with ropes or scaffolds. (<u>Id</u>.) The ALJ found, at step four, that plaintiff was unable to perform any past relevant work, because plaintiff had none. (AT 27.) Finally, the ALJ found, at step five, that there are jobs that exist in significant numbers in the national economy that the claimant could perform, considering his age, education, work experience, and RFC. (AT 27.) The ALJ notified plaintiff of his unfavorable decision on September 5, 2007, and informed plaintiff of the procedures for filing an appeal. (AT 17.) The ALJ notified plaintiff that if he wished to submit any new evidence to the Appeals Council, that

---

[5] Softening of the spinal cord. <u>Stedman's Medical Dictionary</u>, 389 (Lippincott Williams & Wilkins, eds., 28th ed. 2006).

plaintiff should do so along with his request for review.  (Id.)

D.      Appeals Council Proceedings

On October 25, 2007, plaintiff, through his attorney, filed a request for a review of the ALJ's decision before the Appeals Council of the Office of Hearings and Appeals of the Social Security Administration.  (AT 15-16.)  On June 12, 2008, the Appeals Council denied plaintiff's request for review, and the ALJ's decision became the final decision of the Commissioner.  (AT 5.)  The Appeals Council's denial stated that it found that the additional evidence submitted by plaintiff did not provide a basis for changing the ALJ's decision, and that the ALJ's decision included adequate reasons for the conclusion that plaintiff's conditions did not prevent him from engaging in light work.  (AT 5-6.)  More specifically, the Appeals Council stated:

> The additional evidence indicates that you continue to be followed at CommuniCare Salud Clinic for chronic back pain.  February 2008 diagnostic studies revealed mild to moderate degenerative changes in the cervical and lumbar spine, findings similar to earlier evidence considered for the decision.  Medication for chronic pain was adjusted in March 2008 to a low dose of Methadone.  The new evidence does not establish that your musculoskeletal conditions impose greater work restrictions than was found in the hearing decision.

(AT 5.)  The Appeals Council notified plaintiff that he could seek review of its decision by filing a civil action.  (AT 6.)

II.     ISSUES PRESENTED

Plaintiff contends that the ALJ committed three principal errors in reviewing plaintiff's claim.  First, plaintiff argues that the ALJ erred by failing to develop the record, namely by failing to independently acquire certain medical records and because the Appeals Council failed to properly consider newly filed medical evidence (Pl.'s Mot. for Summ. J. at 7.) Second, plaintiff argues that the ALJ failed to credit the third party written statement of plaintiff's son.  (Id.)  Third, plaintiff argues that the ALJ erred by not using the services of a vocational expert to assess plaintiff's RFC.  (Id.)

8

III.   STANDARD OF REVIEW

The district court reviews the Commissioner's decision to determine whether it is (1) free of legal error, and (2) supported by substantial evidence in the record as a whole. Bruce v. Astrue, 557 F.3d 1113, 1115 (9th Cir. 2009); accord Vernoff v. Astrue, 568 F.3d 1102, 1105 (9th Cir. 2009). This standard of review has been described as "highly deferential." Valentine v. Comm'r of Soc. Sec. Admin., 574 F.3d 685, 690 (9th Cir. 2009). "Substantial evidence means more than a mere scintilla but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Bray v. Comm'r of Soc. Sec. Admin., 554 F.3d 1219, 1222 (9th Cir. 2009) (quoting Andrews v. Shalala, 53 F.3d 1035, 1039 (9th Cir. 1995)); accord Valentine, 574 F.3d at 690 (citing Desrosiers v. Sec'y of Health & Human Servs., 846 F.2d 573, 576 (9th Cir. 1988)). "The ALJ is responsible for determining credibility, resolving conflicts in medical testimony, and for resolving ambiguities." Andrews, 53 F.3d at 1039; see also Tommasetti v. Astrue, 533 F.3d 1035, 1041 (9th Cir. 2008) ("[T]he ALJ is the final arbiter with respect to resolving ambiguities in the medical evidence."). Findings of fact that are supported by substantial evidence are conclusive. 42 U.S.C. § 405(g); see also McCarthy v. Apfel, 221 F.3d 1119, 1125 (9th Cir. 2000). "Where the evidence as a whole can support either a grant or a denial, [the court] may not substitute [its] judgment for the ALJ's." Bray, 554 F.3d at 1222 (citing Massachi v. Astrue, 486 F.3d 1149, 1152 (9th Cir. 2007)); see also Ryan v. Comm'r of Soc. Sec., 528 F.3d 1194, 1198 (9th Cir. 2008) ("Where the evidence is susceptible to more than one rational interpretation, the ALJ's decision should be upheld."). However, the court "must consider the entire record as a whole and may not affirm simply by isolating a 'specific quantum of supporting evidence.'" Ryan, 528 F.3d at 1198 (quoting Robbins v. Soc. Sec. Admin., 466 F.3d 880, 882 (9th Cir. 2006)); accord Lingenfelter v. Astrue, 504 F.3d 1028, 1035 (9th Cir. 2007).

////

////

1  IV.     ANALYSIS

2         A.     The ALJ Adequately Developed The Record.

3              Plaintiff contends that the ALJ failed to properly develop the record. Disability hearings are not adversarial. See DeLorme v. Sullivan, 924 F.2d 841, 849 (9th Cir. 1991); see also Crane v. Shalala, 76 F.3d 251, 255 (9th Cir. 1996) (recognizing that the ALJ has a duty to develop the record even when the claimant is represented). However, the ALJ's duty to further develop the record is only "triggered . . . when there is ambiguous evidence or when the record is inadequate to allow for proper evaluation of the evidence." Mayes v. Massanari, 276 F.3d 453, 459-60 (9th Cir. 2001); Tonapetyan v. Halter, 242 F.3d 1144, 1150 (9th Cir. 2001). The ALJ may develop the record in numerous ways, including, inter alia, by (1) making a reasonable attempt to obtain medical evidence from the claimant's treating sources; (2) ordering a consultative examination when the medical evidence is incomplete or unclear and undermines the ability to resolve the disability issue; (3) subpoenaing or submitting questions to the claimant's physicians; (4) continuing the hearing; or (5) keeping the record open for supplementation. See Tonapetyan v. Halter, 242 F.3d 1144, 1150 (9th Cir. 2001); 20 C.F.R. § 404.1517; 20 C.F.R. § 416.917; 42 U.S.C. § 423 (d)(5)(A). The claimant, however ultimately bears the burden of proving that he has an impairment that meets or exceeds the Social Security disability listings. Burch v. Barnhart, 400 F.3d 676, 683 (9th Cir. 2005); 42 U.S.C. § 423(d)(5)(A) (recognizing that the claimant must furnish medical and other evidence of his disability); 20 C.F.R. § 404.1512(c) ("You must provide medical evidence showing that you have impairment(s) and how severe it is during the time you say you are disabled.").

             Plaintiff argues that the 2005 "Disability Report submitted to Social Security in connection with Mr. Osborne's appeal indicated that he had a new diagnosis - dual diagnosis of anxiety attacks," that he was being seen by Dr. Rajapam, a psychiatrist, and that the ALJ did not develop this fact by requesting underlying medical records from this psychiatrist. (Dkt. No. 18 at 8; AT 142-48.) Plaintiff complains that these underlying records were not part of plaintiff's

10

1  "official record," and that there was "no indication that Social Security ever requested these
2  records." (Dkt. No. 18 at 8.)
3         The ALJ fulfilled his duty to adequately develop the record. The record included
4  the opinion of Dr. Michael Joyce, a consultative psychiatric examiner, who examined plaintiff,
5  reviewed plaintiff's records and concluded that there was no evidence of any mood, thought or
6  anxiety disorder. Dr. Joyce also stated that with sustained sobriety, plaintiff appeared generally
7  capable of engaging in usual work situations. Further, prison records related that the plaintiff
8  was cognitively intact and found no further mental evaluation necessary. The ALJ recognized
9  that the state agency physicians further concluded that there was no evidence of a medically
10 determinable psychiatric impairment limiting the plaintiff's functioning. This evidence was
11 sufficient to enable the ALJ to make a determination, based on substantial evidence, that the
12 plaintiff was not disabled.
13        Further, the ALJ was fully aware of plaintiff's contentions regarding his I
14 hpanxiety attacks. (AT 22.) The ALJ noted that there was no evidence of treatment for such an
15 impairment dating back to 1994, plaintiff's claimed date of onset. (Id. (recognizing plaintiff's
16 contention that anti-social behavior, neck pain, back pain, right hand problems and anxiety
17 attacks have prevented him from working since May 1994, but noting that there is no evidence of
18 any medical treatment rendered in May 1994 or thereafter until 2000).) The ALJ's self-initiated
19 acquisition of additional medical records regarding plaintiff's mental health status in 2005, over
20 ten years after the alleged date of onset, does not appear reasonable, dispositive or necessary in
21 light of the completeness of the record. Dr. Joyce's psychiatric report was thorough and detailed.
22 Plaintiff failed on multiple occasions to appear or testify at a hearing before the ALJ or to
23 supplement the record with evidence controverting or adding to that already before the ALJ.
24 Plaintiff did not avail himself of the multiple opportunities to supplement the record to attempt to
25 meet his burden of establishing his disability.
26        Moreover, at the hearing before the ALJ in August 2007, the ALJ instructed

1  plaintiff's counsel that he was going to "make a decision on the record that we now have, unless
2  you have some additional medicals to submit?"  (AT 270.)  Plaintiff's counsel responded "I have
3  no additional medical records."  (Id.)  "At all times, the burden is on the claimant to establish
4  [his] entitlement to disability insurance benefits." Tidwell v. Apfel, 161 F.3d 599, 601 (9th Cir.
5  1998).  Plaintiff has not offered any reason why the records were not submitted to the ALJ or
6  Social Security.  The court is unaware of any authority, and plaintiff does not cite any, which
7  requires Social Security to request all medical records from all providers visited by plaintiff,
8  regardless of the breadth of information already in the record or despite providing numerous
9  opportunities for plaintiff to supplement the record.

10  Before the Appeals Council, plaintiff again failed to avail himself of the
11  opportunity to present all of the evidence he now complains is missing from the record.  On
12  March 17, 2008, the Appeals Council granted plaintiff another extension of time, and stated that
13  plaintiff "may send us more evidence or a statement about the facts and law in this case."  (AT
14  9.)  The Appeals Council also informed plaintiff that if they did not hear from plaintiff within 30
15  days, they would "assume that you do not want to send us more information" and would
16  "proceed with our action based on the record we have."  (Id.)  Plaintiff's contentions regarding
17  the adequacy of the record are without merit.  The ALJ has fulfilled his duty to develop the
18  record.

19  Plaintiff also contends, without citation to relevant legal authority, that "given the
20  quality of the new evidence submitted to the Appeals Council, [plaintiff]'s case should have been
21  remanded to the ALJ for further development."  (Dkt. No. 18 at 10.)  Not all new evidence
22  triggers additional review.  See, e.g., Bates v. Sullivan, 894 F.2d 1059, 1064 (9th Cir. 1990)
23  (overruled on other grounds) (Appeals Council properly denied review where new evidence was
24  "not consistent" with the record).  Social Security regulations provide that where new and
25  material evidence is submitted to the Appeals Council with the request for review, the entire
26  record will be evaluated and review of the ALJ's decision will be granted where the Appeals

Council finds that the ALJ's action, findings or conclusion is contrary to the weight of the evidence currently of record. Id.; 20 C.F.R. § 404.970. The Appeals Council shall consider any new and material evidence only where it relates to the period on or before the date of the ALJ's decision. 20 C.F.R. § 404.970.

In the instant case, the Appeals Council did consider the additional reports offered by plaintiff regarding his capacity to perform light work. (AT 6.) The Appeals Council found no grounds upon which to reverse the ALJ's finding of not disabled. Plaintiff, unhappy with this conclusion, characterizes the Appeals Council's failure to remand as error, due to its "failure to properly evaluate the new evidence." (Dkt. No. 18 at 9.) Quite plainly, the Appeals Council evaluated the evidence but rendered a conclusion unfavorable to plaintiff. (See AT at 6 (recognizing the additional evidence, discussing it and holding that it did not establish that plaintiff's medical conditions impose greater work restrictions than was found in the ALJ's decision).) An unfavorable result does not make it an improper result.

B.   The ALJ Properly Evaluated and Credited Third Party Statements.

Plaintiff next contends that the ALJ erred in failing to properly evaluate or credit plaintiff's son's written statement regarding the nature and extent of plaintiff's functional limitations. (Dkt. No. 18 at 10.) Plaintiff takes issue with the fact that the ALJ's "only reference to Mr. Osborne's sons's report was the incomplete summary that 'a third party also reported the claimant was mad at the world; he has been in prison for most of his life and he worried about the police.'" (Id. (citing AT 24).)

Plaintiff's son submitted a Function Report, Adult Third Party, Form SSA-3380-BK regarding his impressions and familiarity with plaintiff's abilities and day-to-day activities. (AT 117-25.) Because neither plaintiff nor his son appeared at the hearing before the ALJ, the ALJ did not have the opportunity to elicit further commentary on the statements in the report. In addition to the son's statements cited by the ALJ in his ruling, plaintiff's son also stated in his nine page report that plaintiff "watches TV all day long" and that he did not "even take walks."

13

1  (AT 117.) Plaintiff complains that all of the plaintiff's son's observations should have been
2  summarized by the ALJ (Dkt. No. 18 at 11 ("The ALJ, however, failed to summarize the
3  majority of Obsorne Jr.'s corroborating statements without any explanation whatsoever.").)
4  Additionally, plaintiff argues that the ALJ should have provided more specific, germane reasons
5  for rejecting plaintiff's son's statements. These propositions are not only impracticable, but they
6  are not required by the law.
7        Plaintiff cites Stout v. Comm'r., 454 F.3d 1050, 1053 (9th Cir. 2006), for the
8  proposition that the ALJ must consider lay witness testimony concerning a claimant's ability to
9  work and that such testimony cannot be disregarded without comment. (Dkt. No. 19 at 28.) Yet
10 unlike the lay witnesses in that case, plaintiff's lay witness son did not testify with knowledge
11 about claimant's ability to work. In contrast, in Stout, the lay witnesses were claimant's co-
12 workers, at least one of whom worked with the claimant for fifteen years. Id. There, the lay
13 witness co-workers testified very specifically about claimant's ability to follow direction in the
14 workplace, and the claimant's uncommon need for supervision to perform uncomplicated tasks.
15 Id. The Ninth Circuit found that the ALJ erred in "wholly [fail]ing to mention [the lay
16 witnesses'] testimony about how Stout's impairments affect his ability to work." Id. This case
17 and its reasoning is inapposite here. Plaintiff's contention that the ALJ failed to reference or
18 discuss any additional statements made by plaintiff's son that were contained in the function
19 report are unfounded because (1) the ALJ did discuss and accept the son's lay witness testimony
20 and (2) plaintiff's son did not testify as to plaintiff's abilities in the workplace. The ALJ noted
21 that the weight of the record, including the examination by a psychiatrist, medical doctors and
22 review of his prior prison medical records, led him to agree with the state agency physicians that
23 there was no evidence of an impairment which limited the claimant's function so completely as
24 to result in a finding of disabled. See Lewis v. Apfel, 236 F.3d 503, 511 (9th Cir. 2001) ("One
25 reason for which an ALJ may discount lay testimony is that it conflicts with medical evidence.").
26       The ALJ discussed here in great detail the findings from the plaintiff's

comprehensive psychiatric examination and complete orthopedic consultative examination. The ALJ also reviewed and discussed, among other things, the plaintiff's prison medical and cognitive records. The ALJ's lengthy and specific opinion also states that he carefully considered "all the evidence." (AT 21.) The court will not engage in "second-guessing" the ALJ's conclusions regarding the weight to be accorded plaintiff's son's written statement or the extent to which it should be submitted. Thomas v. Barnhart, 278 F.3d 947, 958-59 (9th Cir. 2002). The ALJ's findings are entitled to deference where, as here, they are sufficiently specific to allow a reviewing court to conclude that the adjudicator rejected the testimony on permissible grounds and did not arbitrarily discredit a witness's testimony. See Bunnell v. Sullivan, 947 F.2d 341, 345-46 (9th Cir. 1991).

### C. The ALJ Was Not Required to Use A Vocational Expert at Step Five.

Finally, plaintiff argues that the ALJ erred by not using the services of a vocational expert to determine whether plaintiff could perform other jobs that exist in substantial numbers in the national economy. (Pl.'s Mot. for Summ. J. at 18 (citing Bruton v. Massanari, 268 F.3d 824, 828 (9th Cir. 2001)).) Plaintiff contends that the ALJ may not rely solely on the Commissioner's Medical-Vocational Guidelines, 20 C.F.R. Pt. 404, Subpt. P, App. 2 (the "GRIDS") to show the availability of other jobs if the GRIDS do not accurately describe a claimant's limitations. (Pl.'s Mot. for Summ. J. at 18 (citing Burkhart v. Bowen, 856 F.2d 1335, 1340 (9th Cir. 1988)).)

The Commissioner counters that the ALJ may, but is not required to, use a vocational expert at step five and that the non-exertional limitations that the ALJ imposed did not significantly erode the unskilled occupational base for unskilled light work. (Def.'s Opp'n & Cross-Motion for Summ. J. at 21 (citing SSRs 83-14 and 85-15[6]).)

---

[6] The Secretary of Social Security issues Social Security Rulings ("SSR") to clarify the Secretary's regulations and policies. See Paulson v. Bowen, 836 F.2d 1249, 1252 n.2 (9th Cir. 1988). Although SSRs are not published in the federal register and do not have the force of law,

At step five of the sequential disability evaluation, the Commissioner bears the burden of proving that the claimant can perform other jobs that exist in substantial numbers in the national economy. Bruton, 268 F.3d at 828 n.1. This burden, as plaintiff recognizes, can be met in one of two ways: (1) by the testimony of a vocational expert or (2) by reference to the GRIDS. Id. Here, the ALJ used the GRIDS.

The GRIDS are in table form. The tables present various combinations of factors the ALJ must consider in determining whether other work is available. See generally Desrosiers v. Sec'y of Health & Hum. Svcs., 846 F.2d 573, 577-78 (9th Cir. 1988). The factors include residual functional capacity, age, education, and work experience. For each combination, the grids direct a finding of either "disabled" or "not disabled."

There are limits on using the GRIDS, an administrative tool to resolve individual claims that fall into standardized patterns: "[T]he ALJ may apply [the GRIDS] in lieu of taking the testimony of a vocational expert only when the grids accurately and completely describe the claimant's abilities and limitations." Jones v. Heckler, 760 F.2d 993, 998 (9th Cir. 1985); see also Heckler v. Campbell, 461 U.S. 458, 462 n.5 (1983). The ALJ may rely on the GRIDS even when a claimant has combined exertional and nonexertional limitations, if nonexertional limitations are not so significant as to impact the claimant's exertional capabilities.[7] Bates v. Sullivan, 894 F.2d 1059, 1063 (9th Cir. 1990), overruled on other grounds, Bunnell v. Sullivan, 947 F.2d 341 (9th Cir. 1991) (en banc); Polny v. Bowen, 864 F.2d 661, 663-64 (9th Cir. 1988);

---

the Ninth Circuit "nevertheless give[s] deference to the Secretary's interpretation of its own regulations." Bunnell, 947 F.2d at 346.

[7] Exertional capabilities are the "primary strength activities" of sitting, standing, walking, lifting, carrying, pushing, or pulling. 20 C.F.R. § 416.969a(b) (2003); SSR 83-10, Glossary; see Cooper v. Sullivan, 880 F.2d 1152, 1155 n. 6 (9th Cir.1989) (exertional limitations are strength-related limitations).
Non-exertional activities include mental, sensory, postural, manipulative and environmental matters that do not directly affect the primary strength activities. 20 C.F.R. § 416.969a(c) (2003); SSR 83-10, Glossary; Cooper, 880 F.2d at 1155 & n. 7 (citing 20 C.F.R. pt. 404, subpt. P, app. 2, § 200.00(e)).

see also Odle v. Heckler, 707 F.2d 439, 440 (9th Cir. 1983) (requiring significant limitation on exertional capabilities in order to depart from the GRIDS).

Plaintiff argues that because the GRIDS are primarily strength based, they, by definition, could not accurately describe plaintiff's nonexertional limitations, and therefore the ALJ was required to employ a vocational expert. (Dkt. No. 1 at 13.) The ALJ found that plaintiff retained sufficient capabilities, exertional or otherwise, to perform light work except that he should avoid climbing ropes and scaffolds. The ALJ did so after considering all of the plaintiff's symptoms and the extent to which these symptoms could reasonably be accepted as consistent with the objective medical and other evidence. (AT 25, citing 20 CFR § 416.929 and SSRs 96-4p and 96-7p).

Plaintiff argues that the ALJ improperly rejected the opinion of examining physician Dr. Nathan Pliam, the Social Security's own consultative examiner, instead adopting the opinion of the state agency non-examining physicians that plaintiff could perform light work. Specifically, plaintiff challenges the rejection of Dr. Pliam's opinion that plaintiff could perform less than light work because he should be limited to standing and walking for 30-60 minutes at a time for a total of four hours a day. (Pl.'s Mot. Summ. J. at 12:1-3.) The reviewing physicians opined that Dr. Pliam's "[r]estriction is too severe based on objective findings," and that plaintiff "should be capable of light work." (AT 217.)

As accurately noted by plaintiff, the Ninth Circuit requires an ALJ to provide specific and legitimate reasons supported by substantial evidence in the record when the ALJ adopts the opinion of a non-examining physician over that of an examining physician. Lester v. Chater, 81 F.3d 821, 830-31 (9th Cir. 1995). The ALJ here did not rely on the opinions of the non-examining physicians alone in rejecting the examining physician's limitations. Rather, the ALJ found that numerous factors supported this conclusion, namely (1) the lack of objective evidence of degenerative disc disease or clear problems with the plaintiff's right hand; (2) the scant medical evidence of treatment for the plaintiff's alleged physical impairments;

1  (3) plaintiff's statement to the examining physician that he was not taking any medication for his
2  complaints and the ALJ's conclusion that if he were experiencing such disabling pain, plaintiff
3  would have likely been taking at least an over-the-counter remedy; (4) the full motion of
4  plaintiff's spine; (5) the lack of evidence of tenderness or spasms in the spine; (6) the fact that
5  plaintiff's straight leg raising was negative; (7) the fact that claimant's grip strength was intact;
6  (8) the fact that plaintiff demonstrated no motor loss in the upper or lower extremities; (9) the
7  lack of indication that plaintiff's activity levels were restricted while in prison for any physical
8  impairment; (10) the fact that claimant's gait and posture were normal; and (11) the fact that
9  plaintiff performed toe and heel walking without difficulty.  (AT 26.)  The ALJ considered at
10 least these factors, in addition to the state agency nonexamining physicians' opinions, in
11 concluding that the plaintiff could perform light work.  The ALJ's analysis, consideration and
12 weighing of this varied and substantial evidence constituted specific, legitimate reasons for
13 discounting the limitations suggested by Dr. Pliam.  See Magallanes v. Bowen, 881 F.2d 747,
14 751-55 (9th Cir. 1989) (upholding the ALJ's decision to reject the opinion of a treating physician
15 based in part on the testimony of a nonexamining medical advisor); Andrews, 53 F.3d at 1039
16 (holding that "substantial evidence" means "more than a mere scintilla, but less than a
17 preponderance").  Even if this evidence is arguably subject to more than one rational
18 interpretation, the standards of review preclude the district court from substituting its judgment
19 for that of the Commissioner.  Morgan v. Comm'r., 169 F.3d 595, 599 (9th Cir. 1999) (also
20 noting that questions of credibility and resolutions of conflicts in the testimony are functions
21 solely of the Secretary).

22         Finally, plaintiff contends that the ALJ was required to call a vocational expert to
23 assess the availability of other jobs in the national economy.  None of the precedent cited by
24 plaintiff supports the proposition that a vocational expert is expressly mandated in the instant
25 case because of plaintiff's collective nonexertional limitations.  The ALJ here, in determining
26 whether plaintiff could make a successful adjustment to light work, considered the Social

Security Rulings relevant to this determination. He recognized that the GRIDS may be used as a framework for decisionmaking even where a claimant has exertional and nonexertional limitations. (See AT 22 (citing, inter alia, SSRs 83-12, 83-14, and 83-15[8]).) The ALJ found that plaintiff's limitations had little or no effect on the occupational base of unskilled light work. (AT 27.) Plaintiff's argument *requiring* the use of a vocational expert in these circumstances is unpersuasive. Kerry v. Apfel, 242 F.3d 382 (9th Cir. 2000) (recognizing that an alleged non-exertional limitation does not automatically preclude application of the GRIDS, and that the ALJ should first determine if a claimant's non-exertional limitations significantly limit the range of work permitted by his exertional limitations); Young v. Sullivan, 911 F.2d 180, 185 (9th Cir. 1990) (permissible for ALJ to rely on the GRIDS as a framework for decision making); see Hoopai v. Astrue, 499 F.3d 1071, 1075 (9th Cir. 2007) (affirming the ALJ and holding that the claimant's depression was not a sufficiently severe non-exertional limitation that required the assistance of a vocational expert). Plaintiff has not demonstrated that the ALJ erred by not consulting with a vocational expert.

V.     CONCLUSION

Based on the foregoing, IT IS HEREBY ORDERED that:

1. Plaintiff's motion for summary judgment or remand is denied;
2. The Commissioner's cross-motion for summary judgment is granted; and
3. Judgment be entered in favor of the Commissioner.

DATED: June 4, 2010

KENDALL J. NEWMAN
UNITED STATES MAGISTRATE JUDGE

---

[8] SSR 85-15 provides the ALJ with clarification of how the GRIDS may be used as a framework for evaluating solely nonexertional impairments.